IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LISA GREGORY, on behalf of herself and all
others similarly situated, and
JOYCE GUARDUCCI,

        Plaintiffs,

        v.                            CIVIL ACTION NO. 2:12cv11

BELFOR USA GROUP, INC.,

        Defendant.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Plaintiffs' Motion for Award of Attorneys' Fees and Costs. Dkt. No. 102. Plaintiffs filed a complaint alleging that Defendant, their employer, failed to pay overtime wages and committed other violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.* The parties eventually reached a settlement, but were unable to resolve the matter of the attorneys' fees and costs to be awarded pursuant to the FLSA, which requires an award to prevailing plaintiffs of a "reasonable attorney's fee to be paid by the defendant, and costs." 29 U.S.C. § 216(b). The matter is fully briefed and ripe for disposition. For the reasons stated below, Plaintiffs' Motion is **GRANTED** and Defendant is **ORDERED** to pay Plaintiffs $115,000 in attorneys' fees and $12,368.63 in costs.

### I. FACTUAL AND PROCEDURAL HISTORY

On January 5, 2012, Plaintiff Lisa Gregory filed a complaint on behalf of herself and all

1

others similarly situated alleging violations of the FLSA.  Gregory was employed by Belfor as an

administrative assistant.  She alleged that she was not compensated adequately for overtime work

because she was improperly classified as an exempt employee, and that she was unlawfully fired

on June 29, 2011 in retaliation for her FLSA complaints.  Gregory brought two individual claims:

one for unpaid wages and overtime and one for retaliation.  She sought backpay, liquidated

damages, punitive damages, and attorneys' fees.  The Complaint also sought relief on the unpaid

wages and overtime claim on behalf of all others similarly situated under the FLSA's collective

action provision.  29 U.S.C. § 216.  On behalf of the collective action, Gregory sought

compensatory, liquidated and punitive damages, injunctive and declaratory relief, and attorneys'

fees, costs, and interest.  Shortly after Gregory filed the Complaint, Plaintiff Joyce Guarducci

opted in to the lawsuit and on July 26, 2012, the Court conditionally certified a collective action

under the FLSA.  Two other plaintiffs also opted in but eventually withdrew.  On December 18,

2012, with only two viable plaintiffs, the parties filed a joint motion requesting that the Court

decertify the collective action, which the Court granted on January 18, 2013.  Dkt. No. 79.

In the meantime, Gregory and Guarducci had provided estimates of their damages to

Belfor.  On March 26, 2012, Plaintiff Gregory served Belfor with her Rule 26(a)(1) Initial

Disclosures, which quantified her damages as $27,275.66 for unpaid overtime and an equal

amount for liquidated damages, for a total of $54,551.32.  Dkt. No. 114-2, at 4.  On September

29, 2012, Guarducci served Belfor with answers to interrogatories, which quantified her damages

as $20,986.95 in unpaid overtime and an equal amount for liquidated damages, for a total of

$41,973.90.  Dkt. No. 114-3, at 8.

Defendant Belfor filed three summary judgment motions (which would have completely

2

resolved the case in its favor if granted) and Plaintiffs filed oppositions to each. The motions contended that Guarducci and Gregory were salaried employees as office managers, and therefore were not entitled to overtime, and that Gregory could not establish a *prima facie* case of retaliation. Before the Court ruled on the summary judgment motions, the parties filed a notice of settlement on May 1, 2013. They were not, however, able to reach a resolution as to the attorneys' fees and costs to be awarded, and Plaintiff filed the instant motion for an award on August 12, 2013. Dkt. No. 102.

On December 3, 2013, the Court ordered the parties to submit the settlement agreement for the Court's review, along with supporting memoranda addressing why the agreement was fair and reasonable. Dkt. No. 112. *See, e.g.*, *Baker v. Dolgencorp, Inc.*, 818 F. Supp. 2d 940, 941 (E.D. Va. 2011) ("[I]t is well established that the settlement of an employee's FLSA action must be approved by a federal court through a stipulated judgment after the court scrutinizes the settlement for fairness." (quotation and punctuation omitted)). The parties complied, and the Court held a hearing on the matter on January 9, 2014, after which it directed the parties to submit a revised agreement amending certain confidentiality and release clauses. On January 24, 2014, the Court approved the revised settlement agreement. Dkt. No. 117.

Pursuant to that agreement, Defendant agreed to pay Gregory $22,500 as a settlement for all of her claims. Half of that amount was designated as wages, and half as liquidated damages. Defendant agreed to pay Guarducci $17,500 as settlement for all of her claims, half of which was designated as wages and the other half as liquidated damages. Dkt. No. 116-1. Further, the agreement provides that Plaintiffs may submit an application for fees and costs to the Court, but that they may not request or seek over $115,000 in fees and $13,000 in costs. Accordingly,

3

Plaintiffs' motion for fees and costs states that the total fee amount resulting from this litigation is $198,167.50, Dkt. No. 105, at 14 n.5, but that they seek only an award of the full $115,000 cap in the settlement agreement. Further, they request $12,368.63 in costs. Defendants filed an Opposition on August 26, 2013, Dkt. No. 104, Plaintiffs filed a Reply on September 3, 2013, Dkt. No. 105, and Defendant (with leave of the Court) filed a Sur-Reply on October 2, 2013, Dkt. No. 111.

## II. LEGAL STANDARD

The FLSA provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Plaintiffs are entitled to fees and costs only if they are a prevailing party, meaning that they have "succeed[ed] on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit." *Chapman v. Ourisman Chevrolet Co., Inc.*, No. AW-08-2545, 2011 WL 2651867, at *13 (D. Md. July 1, 2011) (quotations omitted). As the fee applicants, Plaintiffs bear the burden of demonstrating the reasonableness of their fee request, *Kenney v. A Touch of Patience Shared Housing, Inc.*, 779 F. Supp. 2d 516, 525 (E.D. Va. 2011), and of "providing sufficient detail in their records to explain and support their requests for fees and costs." *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012).

The United States Court of Appeals for the Fourth Circuit has clearly set forth the method a court should use in determining a reasonable attorneys' fee award. In *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014), it explained:

> The proper calculation of an attorney's fee award involves a three-step process. First, the court must "determine the lodestar figure by multiplying the number of reasonable hours

4

expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.* at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

(Footnote omitted). The *Johnson* factors used to determine the initial lodestar figure include:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5. The Supreme Court has stated that there is a "strong presumption" that the lodestar figure represents a reasonable attorneys' fee, which may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

While some courts hold that costs to be awarded under the FLSA are limited to those enumerated in 28 U.S.C. § 1920, *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010); *Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988), in the Fourth Circuit, costs may be awarded beyond the limitations of § 1920 as part of the reasonable attorneys' fee specifically authorized by the FLSA. *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) ("[W]here attorney's fees are expressly authorized by statute (as they are in 29 U.S.C. § 216(b)), the trial court is not limited to Rule 54(d), but, in addition, has authority to include litigation expenses as part of a 'reasonable attorney's

5

fee.'" (quotation and footnote omitted)). *Accord Smith v. Diffee Ford–Lincoln–Mercury, Inc.,*
298 F.3d 955, 969 (10th Cir. 2002). Only costs that are "reasonably necessary" may be taxed
against the opposing party. *BDT Prods., Inc. Lexmark Int'l, Inc.*, 405 F.3d 415 (6th Cir. 2005).
*See also Smith*, 298 F.3d at 969 ("Under the FLSA, costs include reasonable out-of-pocket
expenses.").

## III. DISCUSSION

### A. Attorneys' Fees

Before applying the three-step process outlined above, the Court must address Defendant's
argument that the Court should decline to award any attorneys' fees to the Plaintiffs. First,
Defendant contends that Plaintiffs are not prevailing parties under the FLSA because they were not
successful on all of their claims. However, Plaintiffs *were* successful on their claims for unpaid
overtime, and Plaintiff Gregory also obtained relief for her retaliation claim. Dkt. No. 103, at 7.
This clearly satisfies the requirement of "a party in whose favor a judgment is rendered," where
"there has been a material alteration in the legal relationship of the parties" and "a judicial
imprimatur on the change." *McAfee*, 738 F.3d, at 88. Second, Defendant maintains that the
Court should decline to award fees because Plaintiffs have failed to provide contemporaneous and
authenticated billing records. With only the spreadsheet prepared by Plaintiffs in support of their
request, Defendant argues, the Court lacks sufficient reliable information on which to base an
award of attorneys' fees. Defendant is correct that several courts have opined that
contemporaneous billing records are strongly favored in a request for attorneys' fees. *E.g.*, *Scott
v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("[A]bsent unusual circumstances attorneys

6

are required to submit contemporaneous records with their fee applications."); *Jones v. Bryant*, No. 1:01CV00936, 2004 WL 1013308 at *1 (M.D.N.C. May 4, 2004); *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 789 (D. Md. 2000) ("[C]ontemporaneous time records generally are the required method of proving hours, and any future request for fees in this case must be accompanied by such records."). Nonetheless, there is no such absolute requirement in the Fourth Circuit—as Defendant apparently concedes in its Sur-Reply, Dkt. No. 111, at 1—and the Court will not now adopt one and penalize Plaintiffs by applying a rule of which they had little notice. *E.g., New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The lengthy and detailed spreadsheet Plaintiffs submitted in support of their fee request satisfies the Fourth Circuit's guidance that the fee applicant "must present a request from which the correct amount may be computed with reasonable dispatch," by "specifically allocat[ing] the time spent on each claim" and "specifically describ[ing] the work which the fee applicant allocated to unsuccessful claims." *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 283-84 (4th Cir. 2006). It is seventeen pages long and contains a detailed breakdown of charges in six-minute increments, including the date, hours worked, description of work, and the name of the attorney and their hourly rate. Further, it clearly distinguishes between work done on collective and individual claims, and is accompanied by a sworn declaration that it is an accurate representation of the work performed. Defendants point to several minor errors, but that alone is insufficient to cast doubt on the validity or reliability of the spreadsheet as a whole. "If [Defendant] doubted whether the compilations faithfully tracked the time sheets, it could have filed a discovery request for the original records." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir.

7

2001). In sum, the Court finds no justification for rejecting the fee petition in its entirety.[1]

### 1. Lodestar

The first step in calculating the attorneys' fees is to determine the lodestar by multiplying the reasonable hourly rate by the reasonable number of hours. In sum, Plaintiffs submit that the total fees expended are $198,167.50 for 824.9 hours. Dkt. No. 105, at 14 n.6. This represents an average hourly rate of just over $240, a composite of the rates charged by each attorney and paralegal: $100 per hour for paralegals, $300 per hour for two partners in the law firm, $250 per hour for a third partner, and $250 and $200 each for two associates. The Court will first address the reasonableness of these rates, considering the third, fifth, sixth and ninth *Johnson* factors: "the skill required to properly perform the legal services rendered," "the customary fees for like work," "the attorney's expectations at the outset of the litigation," and "the experience, reputation, and ability of the attorney." *Castel v. Advantis Real Estate Servs. Co.*, No. 2:07cv435, 2008 WL 3348774 at *3 (E.D. Va. Aug. 8, 2008). The key question is whether "the requested hourly rates are consistent with the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award." *McAfee*, 738 F.3d at 91 (quotation omitted). While Plaintiffs ultimately bear the burden of demonstrating that the requested rates are reasonable, the Court observes that Defendant does not dispute the reasonableness of the rates themselves.

Plaintiffs have detailed the backgrounds and experience of the attorneys and their qualifications in labor and employment law. In addition, they have included a declaration of an employment law attorney from a different firm who asserts that based on his experience the rates

---

[1] Defendant alludes to a contingency fee agreement between Plaintiffs and their counsel, which it implies would further reduce Plaintiffs' recovery, as another reason for rejecting Plaintiffs' fee request. But at the hearing regarding the fairness of the settlement agreement, Plaintiffs' counsel stated that they would only recover a contingency fee if they received zero fees as a result of this Court's order.

are commensurate with those "billed by other attorneys with similar experience in the Hampton Roads legal community for handling employment litigation matters" before this Court." Dkt. No. 103-7, at 3. The rates are also comparable by those found to be reasonable in other like cases in this district. *Kennedy*, 779 F. Supp. 2d at 526. As to the attorneys' expectations at the outset, counsel has stated it expected it would be compensated if Plaintiffs recovered, which Plaintiffs have. Dkt. No. 103-6, at 4. For all of these reasons, the Court finds that Plaintiffs have satisfied their burden of showing that the requested hourly rates are reasonable.

The other component of the lodestar figure is the number of hours expended. Defendant's primary argument is that all of the hours worked after February 2012 (the month after Plaintiff Gregory filed the complaint) are unreasonable because Plaintiffs "chose to forgo early settlement in favor of pursuing a collective action." Dkt. No. 104, at 9. Accordingly, Defendant contends, Plaintiffs should receive no more than $21,115.98. *Id.*, at 10. However, Defendant is quite vague about the nature of its discussions with Plaintiffs at their February 2012 meeting. Defendant says it was "prepared" to offer Plaintiff Gregory "the full value of her claim" and "wanted" to resolve her claims for full value. But nowhere does Defendant say that it actually made such an offer or gave any indication of these subjective intentions to Plaintiff's counsel. With only vague statements about what Defendant thought was the best course of action early in the litigation, the Court does not agree that it is proper to deem all work after February 2012 as unreasonable. The Court will instead construe Defendant's argument as one that the fee award should be reduced because Plaintiffs unreasonably spent time on the unsuccessful collective action, an argument that will be addressed below in the context of the second and third steps of the analysis.

9

Next, the Court will address the various numerous errors that Defendant alleges exist in Plaintiffs' spreadsheet (other than those which relate to whether certain matters are properly classified as pertaining to the individual or collective claims, which will also be addressed in the context of the second and third steps of the analysis). The Court will not resolve the parties' dispute regarding an earlier version of the spreadsheet that Defendant referenced in its Opposition. It is clear that Defendant's original reading of that spreadsheet was erroneous, and the Court therefore need not resolve whether or not Defendant's reference to it violates the Federal Rules of Evidence. Turning to Defendant's relevant objections for calculating the lodestar figure, Plaintiffs have conceded in their Reply that Defendant has correctly identified double-billing on May 17, 2013, and have adjusted their total fee request accordingly. Second, Defendant states that there is improper double-billing for phone calls on April 24, 2013. Dkt. No. 104, at 8 n.15. But the Court sees no indication of double-billing for phone calls that day, which appear to reflect a dialogue regarding a potential settlement between Plaintiffs' counsel, Plaintiffs, and opposing counsel.

Third, Defendant maintains that an award of attorneys' fees may not include "purely clerical or secretarial tasks," *Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x 543, 545 (9th Cir. 2011), and identifies multiple entries that it believes meet that definition. Dkt. No. 104, at 13-14. *See also, e.g.*, *Abusamhadaneh v. Taylor*, No. 1:11cv939, 2013 WL 193778 at *38 (E.D. Va. Jan. 17, 2013) ("Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . . attorney fees."). Defendant's argument is in accordance with prevailing case law, and accordingly, the Court will eliminate the following eight line items which are properly classified as clerical or administrative:

10

- 12/28/11: Prepare civil cover sheet, summons & check request for Complaint filing; correspondence to Clerk enclosing Complaint for filing.  1 hour/**$100**

- 5/[sic]/2012: Review and index Belfor's documents responsive to Request for Production of Documents and index same for associate; place in binder.  0.4 hours/**$40**

- 5/31/12: Prepare Notice of Depo for David Elgin (6/8/12); arrange for court reporter; add to calendar.  0.4 hours/**$40**

- 5/31/12: Revisions to Depo Notice and cover letter; email final version to all counsel; hard copies by mail.  0.2 hours/**$20**

- 6/1/12: Index documents rec'd 5/24/12 for depo on Friday.  2 hours/**$200**

- 7/3/12: Finalize witness subpoena for Ms. Porritt's deposition next week; request information on paying by credit card and prepare request.  0.5 hours/**$50**

- 9/5/12: Telephone call to Judge Stillman's chambers to get fax number; fax correspondence to Judge Stillman regarding Motion to Compel.  0.2 hours/**$20**

- 10/3/12: Indexing of documents relating to Guarducci claim.  7.20 hours/**$720**

The total of the above items is 11.9 hours and $1,190, which reduces Plaintiffs' total calculated fee expenditure to $196,977.50 for 813 hours.

Fourth, Defendant argues that Plaintiffs should not be allowed to include certain "duplicative" billing: for example, two attorneys attending a deposition, appearing in court, and conducting internal meetings.  The Court does not agree that these entries are unnecessarily duplicative and representative of poor billing judgment.  As Plaintiffs explain in their Reply, counsel was careful for most of these events to avoid having both attorneys present for the entire time and to limit attendance as necessary.  Additionally, the Court notes that there are multiple

11

entries in Plaintiffs' fee request where their attorney Ms. Hogan indicates she participated in a
conference with a partner or associate regarding "strategy," but only billed for her time and not that
of the other attorneys. There is no *per se* rule preventing more than one attorney from
participating in court, at depositions, or at conferences; indeed, in the Court's experience,
attendance of more than one attorney is not at all uncommon.

Fifth, Defendant objects to several entries that it contends are vague and/or redacted to
protect applicable privileges. The Court does not find the redactions unreasonable; nor does it
find the specified entries unnecessarily vague. Sixth, Defendant points to a set of entries for Ms.
Hogan between May 20, 2013, and May 31, 2013, that contain multiplication errors and in one
instance, an hourly rate of $300 rather than $250. However, multiplying the correct rate by the
listed number of hours actually yields a higher sum than that listed on the spreadsheet and
therefore works against the Defendant, so the Court will not address this objection and will use
Plaintiffs' final totals for those days.

With these objections resolved, the Court will turn to the reasonableness of the number of
hours (813) expended by Plaintiffs' counsel. The first *Johnson* factor—the time and labor
involved—is fully accounted for in this hour total. The Court will consider several additional
*Johnson* factors that are relevant in this case for determining whether the number of hours is
reasonable. Particularly relevant are (2) "the novelty and difficulty of the questions raised," (4)
"the attorney's opportunity costs," (7) "the time limitations imposed by the client or
circumstances," (8) "the amount in controversy and the results obtained," (10) "the undesirability
of the case within the legal community," and (11) "the nature and length of the professional
relationship between attorney and client." While the "novelty and complexity" of the issues in

this case are presumably also reflected in the number of billable hours, *Blum v. Stenson*, 465 U.S. 886, 898 (1984), the Court notes that there were a significant number of vigorously disputed issues in this case that persisted until the parties eventually reached a settlement, and that this complexity supports the number of hours expended by the attorneys in this case.   As to the opportunity costs, counsel has stated that the time devoted to this case "could have been spent representing other existing clients and new clients" and that they would have charged those clients the same billing rates.  Dkt. No. 103-6, at 4.   Therefore, both the second and fourth factors weigh in favor of establishing the lodestar figure at Plaintiffs' requested amount.

The Court finds that there were no special time limitations in this case, and therefore gives little weight to the seventh *Johnson* factor.   To avoid giving double the weight to counsel's success, a key issue that the Fourth Circuit has directed courts to consider after establishing the lodestar, the Court will also give little weight to the eighth factor, the amount in controversy and results obtained.   However, given that counsel was pursuing a collective action for a significant period of time, the Court finds the relatively high number of hours spent in this case to be reasonable.   The parties present very little information as to the tenth and eleventh factors, and the Court accordingly gives those factors little weight.

In sum, the relevant factors weigh in favor of the reasonableness of the number of hours spent.   Applying the final *Johnson* factor of comparing awards in similar cases to the lodestar figure in this case of $196,977.50 for 813 hours, the Court finds the figure comparable, although it is admittedly difficult to find any case with identical circumstances as every case is different.   For example, in *Castel*, the Court approved a fee award of $139,668.   2008 WL 3348774. Accordingly, the Court finds that the lodestar is **$196,977.50**.

13

## 2.  Reduction for unrelated and unsuccessful claims

Next, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to

successful ones."  *McAfee*, 738 F.3d at 88.  As the Fourth Circuit has explained,

> The reason for not subtracting hours spent on unsuccessful claims that are related to
> successful ones is that when successful and unsuccessful claims are related, "[m]uch of
> counsel's time will be devoted generally to the litigation as a whole, making it difficult to
> divide the hours expended on a claim-by-claim basis."

*Johnson v. City of Aiken*, 278 F.3d 333, 337 n. 7 (4th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461

U.S. 424, 435-37 (1983)).  In this case, Plaintiffs' fee application has distinguished between time

spent on Plaintiffs' individual claims, which were successful and on the collective action, which

was not.  The Court cannot conclude that it is difficult to divide the hours between the two or that

the claims arose from "a common core of facts" that are "inextricably intertwined."  *Abshire v.*

*Walls*, 830 F.2d 1277, 1283 (4th Cir. 1987).  *See also Andrade*, 852 F. Supp. 2d at 642

(subtracting hours where those devoted solely to unsuccessful claims "can be identified and

separated").  Accordingly, the Court will reduce the lodestar by the amount of fees attributable

solely to the collective action.

Plaintiffs have calculated this amount as $41,800.  Defendant argues that Plaintiffs have

erroneously excluded from this total their work on a Motion to Compel, Motion to Certify, and a

corporate deposition.  Dkt. No. 104, at 5-7.  The parties' briefing on Plaintiffs' Motion to

Compel indicates that it involved material Plaintiffs contended was relevant to both Gregory's

individual claims and the collective action.  *E.g.*, Dkt. No. 42 ("This information is highly

relevant to Gregory's specific claim and to the identity of the potential class.").  The Court finds

that as to the Motion to Compel, it is impracticable to separate time spent on the collective action

from time spent on Gregory's individual claims; accordingly, it would be improper to grant

14

Defendant's request to preclude Plaintiffs from recovering fees for that work.   However, the Court does conclude that Plaintiffs could have separated time spent on individual and collective claims for an entry on March 23, 2013: "Telephone call with partner and opposing counsel regarding hearing and discovery issues; telephone call with Ms. Gregory regarding discovery issues and Second Declaration."   Dkt. No. 103-1, at 5.   Plaintiffs concede that the Second Declaration pertains only to the collective action; accordingly, Plaintiffs should have separated the time spent on the two telephone calls but did not.   The Court will therefore exclude the entire entry, which was for $75.   Finally, Defendant objects to billing for a corporate deposition that apparently addressed both collective and individual claims.   But as with the work on the Motion to Compel discussed above, the Court finds that it would be impracticable to separate time preparing for and attending the deposition that pertained to the individual and collective claims. *See* Dkt. No. 103, at 16-17.

Subtracting $41,875 from the lodestar yields **$155,102.50.**

### 3.  Degree of success

Finally, the Court should consider reducing the fee to account for the degree of success attained by Plaintiffs' counsel.   Plaintiffs were successful on all of their individual claims, but received substantially less than that to which they claimed they were entitled.   Gregory received $22,500 as a settlement for all of her claims, less than half of the amount she previously quantified as being owed in backpay and liquidated damages, and she received nothing in punitive damages sought for her retaliation claim.   Defendant agreed to pay Guarducci $17,500 as settlement for all of her claims, also less than half of what she sought for backpay and liquidated damages.   The total Plaintiffs received--$40,000--is just over a third of the $115,000 counsel requested pursuant

15

to the cap in the settlement agreement.   Nonetheless, the Supreme Court has "reject[ed] the proposition that fee awards ... should *necessarily* be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 565 (1986) (emphasis added).   The Court emphasized the *sui generis* nature of civil rights cases, where plaintiffs "seek [ ] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms" and fee awards are used to deter future violations. *Id.* at 575-76. Nevertheless, the Court expressly held that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded." *Id.* at 574.   And the Supreme Court in that case affirmed an attorney's fee award that was "slightly in excess of seven times the plaintiff's recovery of compensatory and punitive damages."   *McAfee v. Boczar*, 738 F.3d 81, 94 (4th Cir. 2013).

The Fourth Circuit has provided recent guidance in *McAfee*.   There, the plaintiff received nearly $3,000 in damages, and the Fourth Circuit reduced the attorneys' fee award to $100,000. 738 F.3d 81.   It noted that even "substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees," but that "a lack of litigation success will." *Id.* at 94.   It is clear from this case law that exact, and even rough, proportionality is not necessarily required in a civil rights case. *Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, 730 F. Supp. 2d 513, 529 (E.D. Va. 2010) (reducing by 10% when plaintiffs recovered only injunctive and declaratory relief but no damages, applying "rough sense of equity to its knowledge of the litigation at issue").   Rather, what is critical is the extent of the vindication of the plaintiffs' claims.   In this instance, even if the Court were to reduce the $155,102.50 found above by 10 or 20% to account for Gregory's apparent failure to recover any punitive damages for her retaliation claim, the fee amount would still exceed the $115,000 counsel requested.

16

Accordingly, Plaintiffs' Motion for Attorneys' Fees is **GRANTED** and Defendant is **ORDERED** to pay Plaintiffs $115,000 in attorneys' fees.

**B.   Costs**

Finally, the Court will turn briefly to the $12,368.63 in costs Plaintiffs requested, less than $13,000 cap in the settlement agreement.   Plaintiffs have also submitted a spreadsheet supporting their request, which lays out in detail the components of the total amount.   Dkt. No. 103-2. Defendant has filed no specific objection to their accounting other than more general arguments which this Court has already rejected.   The supporting spreadsheet reveals that the bulk of the claimed costs was spent on court reporter and deposition transcript fees.   The Court finds that Plaintiffs have met their burden of detailing their costs and showing that they were reasonably necessary out-of-pocket expenses.   Therefore, Plaintiffs' Motion for Costs is **GRANTED** and Defendant is **ORDERED** to pay Plaintiffs $12,368.63 in costs.

**IV. CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Award of Attorneys' Fees and Costs is **GRANTED**.   Defendant is **ORDERED** to pay Plaintiffs $115,000 in attorneys' fees and $12,368.63 in costs.

The Court **DIRECTS** the Clerk to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February _11_ , 2014

Raymond A. Jackson
United States District Judge